IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COREY ALLAN DONALDSON,<br><br>                       Plaintiff,<br><br>v.<br><br>SGT. SHAWN STOKER,<br>CLINTON CITY, UTAH,<br>KEVIN LEE DAY<br><br>                    Defendants. | **MEMORANDUM DECISION & ORDER<br>TO DISMISS AMENDED COMPLAINT**<br><br>Case No. 2:16-cv-784<br><br>Judge Clark Waddoups |

## INTRODUCTION

This matter is before the court *sua sponte* under 28 U.S.C. § 1915(e)(2)(B) on the 42

U.S.C. § 1983 Amended Complaint (ECF No. 22) that Plaintiff Corey Allan Donaldson (Mr.

Donaldson) filed.

Due to deficiencies in the original Complaint (ECF No. 4), the court issued an order

(ECF No. 20) instructing Mr. Donaldson to file an Amended Complaint. (ECF No. 22.) After

filing the Amended Complaint, Mr. Donaldson filed an Affidavit (ECF No. 24) and eight

exhibits. (ECF Nos. 24-1–24-8.) After reviewing all relevant materials, the court finds that Mr.

Donaldson's Amended Complaint (ECF No. 22) is frivolous under 28 U.S.C. § 1915(e)(2)(B)(i)

and DISMISSES it with prejudice.

## RELEVANT FACTS

Sometime in August or September of 2012, Kevin Day (Day) lent his truck to Mr.

Donaldson. (ECF Nos. 24-1; 24-3 at 2.) "On or about December 31, 2012," Mr. Donaldson

robbed a bank in Jackson, Wyoming. (ECF. No. 24-8 at 1.) Mr. Donaldson used the truck during

this robbery. (*See* ECF No. 24-3 at 2.)

On January 17, 2013, the Syracuse Police telephoned Day. (ECF No. 24-8 at 1.) Day told the Syracuse Police that he had loaned the truck to Mr. Donaldson. (ECF No. 24-8 at 1.) On January 18, 2013, the Syracuse Police met Day in person. (ECF No. 24-3 at 2). Day told the Syracuse Police that Mr. Donaldson never returned the truck, and had threatened Day to not report the truck stolen. (ECF No. 24-3 at 2.) Later that day, Clinton City Police Sergeant Stoker (Stoker) visited Day at his residence. (ECF No. 24-3 at 2.) Day gave Stoker emails that Mr. Donaldson had written to Day. (ECF NO. 24-3 at 2.) The emails indicated that Mr. Donaldson had no intention of returning the truck to Day. (ECF NO. 24-3 at 2.) Additionally, the emails insinuated threats to Day's family. (ECF No. 24-3 at 2). And the emails instructed Day to not report the truck stolen. (ECF NO. 24-3 at 2.)

On January 22, 2013, Stoker interviewed Mr. Donaldson in person. Mr. Donaldson told Stoker that Day had lent him the truck. (ECF NO. 24-3 at 4.) He also told Stoker that he had "retained possession of the vehicle until approximately three weeks ago." (ECF NO. 24-3 at 24.) Additionally, he told Stoker that he had left the truck in a parking garage in Sacramento, California. (ECF NO. 24-3 at 4.) Mr. Donaldson admitted to having asked Day to not report the truck stolen, but denied doing anything that would cause Day to feel threatened. (ECF NO. 24-3 at 4.) Mr. Donaldson also told Stoker that he had left $8,000 under Day's door mat, and had left a voicemail for Day informing him that the money was for the truck. (ECF NO. 24-3 at 4; ECF NO. 24-8 at 5.)

On January 23, 2013, Stoker again interviewed Day. Day maintained that Mr. Donaldson "was not welcome to be in possession of" his truck. (ECF NO. 24-3 at 5.) And Day told Stoker that "there was no agreement or arrangement . . . made between [Mr. Donaldson and Day] to the contrary." (ECF NO. 24-3 at 5.) Day also maintained that he felt threatened and feared for his

safety and the safety of his family. (ECF NO. 24-3 at 5.) Stoker mentioned to Day that Mr.

Donaldson had claimed he had "left a large sum of money from the bank robbery under" Day's

doormat for the truck. (ECF NO. 24-3 at 5.) The interview ended because Day said he had to

pick up his children. (ECF NO. 24-3 at 5.)

The next day, on January 24, 2013, Day's attorney contacted Stoker. (ECF NO. 24-3 at

5.) The attorney told Stoker that Day had found $8,000 under his doormat. (ECF NO. 24-3 at 5.)

But the attorney told Stoker that Day did not know "where or who the money was from." (ECF

NO. 24-3 at 5.) Additionally, the attorney told Stoker that Day "was not contacted by Mr.

Donaldson about the money." (ECF NO. 24-3 at 5.) The attorney also told Stoker that Day was

"interested in pursuing criminal charges regarding the vehicle." (ECF NO. 24-3 at 5.)

On February 14, 2013, Stoker executed a Declaration for Warrant of Arrest. In this

Declaration, he provided the following:

> [i]n September 2012, [Day] lent his truck to [Mr. Donaldson.] [Mr. Donaldson]
> refused to return the [truck] and threatened [Day] to not report it stolen. After
> several months, [Mr. Donaldson] was apprehended and admitted that he took the
> [truck], did not return it, and left it in a parking garage in California.

 (ECF NO. 24-1.) The state court appears to have issued an arrest warrant on February 15, 2013.

(*See* ECF NO. 24-6.)

On April 30, 2013, at Mr. Donaldson's bank robbery trial, Day provided testimony that

contradicted what he had previously told Stoker (through his attorney) on January 24, 2013. Day

testified that he had received two voicemails from Mr. Donaldson near New Year's Eve of 2012.

(ECF NO. 24-4 at 5.) Day admitted that Mr. Donaldson's first voicemail instructed Day to

"check under [his] mat" because "there was something under there to take care of the truck."

(ECF NO. 24-4 at 5.) Day testified that Mr. Donaldson's second voicemail informed him that the

money under the doormat was not from Mr. Donaldson. (ECF NO. 24-at 5.) But Day's testimony

also confirmed what Day had previously told Stoker about being scared of Mr. Donaldson. (ECF NO. 24-8 at 7.) (When Mr. Donaldson asked Day "you mentioned when you spoke to Todd that you were frightened when I arrived at your house," Day replied "yes." )

Mr. Donaldson was found guilty of bank robbery and sentenced. Mr. Donaldson alleges that while he was in federal custody, the Utah state court issued an order to law enforcement directing them to transport him from a federal facility in Georgia to appear before the Utah state court for the auto theft charge. (ECF NO. 24-5.) Mr. Donaldson was transported from Georgia to Utah near November 22, 2013. (ECF NO. 24-6.) The auto theft charge was eventually dismissed on February 3, 2014. (ECF NO. 24-6.)

Mr. Donaldson brings this suit, pursuant to 42 U.S.C. § 1983, against three defendants—Stoker, Day, and Clinton City, Utah. (ECF No. 22 at 1.) Mr. Donaldson alleges that Stoker, while "acting under color of law," "violated [his] rights." (ECF No. 22 at 2.) Mr. Donaldson alleges that Day was acting under "color of law" "by engaging in [an] agreement with Police," "to violate [his] rights" by executing "false charges against [him]."(ECF No. 22 at 3.) Mr. Donaldson alleges that Clinton City, as Stoker's employer, is "responsible for Stoker's [alleged] violations of rights." (ECF No. 22 at 2.)

Mr. Donaldson further alleges that he was illegally arrested and charged with auto theft. (*See* ECF No. 22 at 4.) He argues that Stoker "knowingly lied, misled, and fraudulently enrolled [the state judge] . . . to secure a warrant for [his] arrest." (ECF No. 24 at 2.) And he appears to argue that Stoker and Day knowingly withheld evidence that, if the state court had considered, would not have resulted in his arrest and detention. (ECF NO. 24 at 3-4) (Stoker "with[held] that [Mr. Donaldson] gave [Day] . . . $8,000 for the vehicle and that [Mr. Donaldson] was in the very

act of giving [Day] even more."); (ECF NO. 22 at 5) (Day "knowingly withheld exculpatory evidence . . . .")

## ANALYSIS

"The legal standard for dismissal under § 1915(e)(2)(B)(i) differs from that of a dismissal under Fed.R.Civ.P. 12(b)(6)." *Wolfson v. Carlucci*, 232 F. App'x 849, 850 (10th Cir. 2007) (footnote omitted). Under § 1915(e)(2)(B)(i), "the court *shall* dismiss the case at any time if the court determines that the action is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i) (emphasis added). Under this provision, district court judges may "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). This means that the court "is not bound . . . to accept without question the truth of the plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992). Instead, the court may "go beyond the pleadings and consider any other materials filed by the parties . . . ." *Sweat v. Rickards*, No. 17-2045, 2017 WL 4772417, at *8 (10th Cir. Oct. 23, 2017).

### A. § 1983

The court begins by sorting out the legal bases underlying Mr. Donaldson's Amended Complaint. Mr. Donaldson alleges that Stoker violated his civil rights by "knowingly fabricat[ing] evidence" related to an auto theft charge that resulted in "malicious prosecution, false arrest, false imprisonment, and kidnapping." (ECF No. 22 at 4.)[1] In his Affidavit, Mr. Donaldson alleges that Stoker "knowingly lied, misled, and fraudulently enrolled [a state judge] . . . to secure a warrant for [Mr. Donaldson's] arrest." (ECF No. 22 at 4.) As explained in the next paragraph, because Mr. Donaldson's arrest was pursuant to an arrest warrant, his allegedly

---

[1] Similarly, Mr. Donaldson alleges that Day "knowingly withheld exculpatory evidence on a false charge of auto theft" "which detonated a chain reaction of violations of [his] rights which included malicious prosecution, false arrest, false imprisonment, and kidnapping." (ECF No. 22 at 5.)

unlawful detention is cognizable as malicious prosecution—not false arrest or false imprisonment.[2]

"Unlike a false arrest or false imprisonment claim, malicious prosecution concerns detention only '[a]fter the institution of legal process.'" *Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008) (quoting *Mondragón v. Thompson,* 519 F.3d 1078, 1083 (10th Cir.2008)). "[T]he issuance of an arrest warrant represents a classic example of the institution of legal process." *Id*. (citation omitted). Mr. Donaldson has alleged that he was arrested pursuant to an arrest warrant. (ECF No. 22 at 4.) His detention was therefore preceded by the institution of legal process. Because Mr. Donaldson's detention was preceded by the institution of legal process, his claim should be characterized as malicious prosecution—not false arrest or false imprisonment. *See Wilkins* 528 F.3d at 799 (citing Michael Avery et al., *Police Misconduct: Law and Litigation* § 2:10 (2007 Westlaw; POLICEMISC database) ("such claims should not be characterized as false arrest or false imprisonment, because detention of the subject is pursuant to legal process.")). The court need not address Mr. Donaldson's false arrest claim and false imprisonment claim. But the court proceeds in its analysis of Mr. Donaldson's malicious prosecution claim.

"[W]hen addressing § 1983 malicious prosecution claims," the Tenth Circuit "use[s] the common law elements of malicious prosecution as the" starting point of its analysis. *Novitsky v. City Of Aurora*, 491 F.3d 1244, 1257 (10th Cir. 2007). "[H]owever, the ultimate question is whether plaintiff has proven the deprivation of a constitutional right." *Id*. In the context of a §

---

[2] The court rejects Mr. Donaldson's kidnapping claim as frivolous. Mr. Donaldson argues that his alleged kidnapping "was actually a federal kidnapping." (ECF No. 24 at 9.) The federal kidnapping statute is 18 U.S.C. § 1201. But 42 U.S.C. § 1983 does not authorize a private citizen to pursue violations of federal criminal law. *Clements v. Chapman*, 189 F. App'x 688, 692 (10th Cir. 2006). Indeed, "Section 1983 cannot 'fill the gap' for what is clearly absent from the federal criminal statutes . . . the existence of a private right of action to enforce those statutes." *Id*.

1983 malicious prosecution claim, the Tenth Circuit "look[s] to both the Fourth and Fourteenth Amendments." *See id*. at 1258.

The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Id; Wilkins* 528 F.3d at 799. Mr. Donaldson has not specifically identified which of his constitutional rights were violated. But Mr. Donaldson has alleged that "many of [his] rights" "were violated." (ECF No. 22 at 3.) Because Mr. Donaldson is a pro se litigant, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court therefore considers whether Mr. Donaldson is entitled to recovery for malicious prosecution under either the Fourteenth Amendment or the Fourth Amendment.[3]

### 1. Fourteenth Amendment

Mr. Donaldson is not entitled to recovery for malicious prosecution under the Fourteenth Amendment because Utah law provides an adequate remedy. The Fourteenth Amendment protects individuals against deprivations of liberty without due process of law. U.S. Const. amend. XIV, § 1. "If a state actor's harmful conduct is unauthorized and thus could not be anticipated pre-deprivation, then an adequate post-deprivation remedy—such as a state tort

---

[3] The Tenth Circuit recognizes a cause of action under § 1983 for malicious prosecution under both the Fourth Amendment and Fourteenth Amendment. *Sanchez v. Hartley*, 810 F.3d 750, 755 (10th Cir. 2016) ("It is true that *Mondragón* recognized the existence of a § 1983 malicious-prosecution claim based on the Fourteenth Amendment. *Mondragón*, 519 F.3d at 1083. In dictum, we questioned whether the same claim could also be based on the Fourth Amendment. *Id.* at 1083 n. 4. In subsequent cases, however, we squarely addressed this question, recognizing a cause of action under § 1983 for malicious prosecution based on the Fourth Amendment.").

claim—will satisfy due process requirements." *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013), *as amended on denial of reh'g* (Jan. 8, 2014).

"Here, [Mr. Donaldson] alleges that [Stoker] conjured up facts to create the illusion of probable cause for an arrest warrant and subsequent prosecution." *Id*. "Such lawlessness could not have been anticipated or prevented pre-deprivation, but a post-deprivation malicious-prosecution claim serves as an effective antidote." *Id*. Utah law provides that remedy. "Utah tort law provides an adequate post deprivation remedy to protect [Mr. Donaldson's] non-Fourth Amendment liberty interests." *Becker v. Kroll*, 494 F.3d 904, 921 (10th Cir. 2007). Indeed, Utah recognizes state causes of action for malicious prosecution. *Neff v. Neff*, 2011 UT 6, ¶ 51, 247 P.3d 380, 394; *see also Gilbert v. Ince*, 1999 UT 65, ¶ 17, 981 P.2d 841, 845. "The existence of the state remedy flattens the Fourteenth Amendment peg on which" Mr. Donaldson's § 1983 malicious-prosecution claim depends. *Myers* 738 F.3d at 1193.

## 2. Fourth Amendment

Mr. Donaldson is not entitled to recovery for malicious prosecution under the Fourth Amendment because the evidence demonstrates that Mr. Donaldson did not suffer a violation of his Fourth Amendment right to be free from unreasonable seizures. There was no Fourth Amendment violation because there was probable cause to support Mr. Donaldson's continued detention from the time of his initial arrest through dismissal of the case. "[A]n arrest warrant must be supported by probable cause to comply with the Fourth Amendment." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Id* (citation and internal quotation marks omitted).

Mr. Donaldson alleges that he was illegally arrested and charged with auto theft. (*See* ECF No. 22 at 4.) ("Stoker knowingly fabricated evidence against me and departed from normal police procedure to secure a false charge of auto theft against me.")) He argues that the affidavit that Stoker prepared in support of the arrest warrant contained deliberately false statements. (ECF No. 24 at 2.) (Stoker "knowingly lied, misled, and fraudulently enrolled [the state judge] . . . to secure a warrant for my arrest.")) And he appears to argue that Stoker deliberately omitted information in the affidavit that would have eliminated probable cause for his arrest.[4] For example, Mr. Donaldson alleges that Stoker "with[held] that [Mr. Donaldson] gave [Day] . . . $8,000 for the vehicle and that I was in the very act of giving [Day] even more.") (ECF NO. 24 at 3-4.)

"It is a violation of the Fourth Amendment for an arrest warrant affiant to knowingly, or with reckless disregard for the truth, include false statements in the affidavit." *Taylor* 82 F.3d at 1562 (citation and internal quotation marks omitted). "Similarly, it is a Fourth Amendment violation to knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause." *Id.* (citation and internal quotation marks omitted). "If an arrest warrant affidavit contains false statements, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Id.* (citation and internal quotation marks omitted). "Where information has been omitted from an affidavit, we determine the existence of probable cause by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant." *Id.* (citation and internal quotation marks omitted).

---

[4] Similarly, Mr. Donaldson alleges that Day "knowingly withheld exculpatory evidence on a false charge of auto theft" "which detonated a chain reaction of violations of [his] rights which included malicious prosecution, false arrest, false imprisonment, and kidnapping." (ECF No. 22 at 5.)

The court finds that Stoker did not knowingly, or with reckless disregard for the truth, include false statements in the affidavit. In his affidavit, Stoker provided:

> [i]n September 2012, [Day] lent his truck to [Mr. Donaldson]. [Mr. Donaldson] refused to return the [truck] and threatened [Day] to not report it stolen. After several months, [Mr. Donaldson] was apprehended and admitted that he took the [truck], did not return it, and left it in a parking garage in California.

(ECF NO. 24-1.) The court finds that it was not a false statement for Stoker to write in his affidavit that Day lent Mr. Donaldson his truck. Next, the court finds that it was not a false statement for Stoker to write in his affidavit that Mr. Donaldson refused to return the truck. Stoker reviewed Mr. Donaldson's email correspondence to Day. These emails "clearly indicate[d] [that] Mr. Donaldson [had] no intention of returning the" truck. (ECF NO. 24-3 at 2.) Next, the court finds that it was not a false statement for Stoker to write in his affidavit that Mr. Donaldson had threatened Day to not report the truck stolen. Again, Stoker read Mr. Donaldson's emails. (ECF NO. 24-3 at 2.) These emails demonstrated that Mr. Donaldson had instructed Day to not report the truck stolen. (ECF NO. 24-3 at 2.) And these emails demonstrated that Mr. Donaldson had threatened Day and his family. (ECF NO. 24-3 at 2.) Next, the court finds that it was not a false statement for Stoker to write in his affidavit that Mr. Donaldson did not return the truck. In his interview with Stoker, Mr. Donaldson admitted that he left the truck in Sacramento, California. (ECF NO. 24-3 at 4.) The court finds that Stoker did not knowingly include any false statement in the affidavit.

The court also finds that Stoker did not knowingly or recklessly omit information from the affidavit which, if included, would have vitiated probable cause. The court acknowledges that Stoker did not mention, in his affidavit, that approximately three months after Mr. Donaldson took the truck, $8,000 was left under Day's doormat. But even if that information had been included in the affidavit, there still would have been probable cause for the arrest warrant

because the affidavit would have still demonstrated a substantial probability that an auto theft had been committed and that Mr. Donaldson had committed the auto theft.[5] The fact that $8,000 was left under Day's doormat, and that Mr. Donaldson was very likely the person who left the money, does not change the following: (1) Mr. Donaldson had possession of the vehicle for approximately three months; (2) Stoker's affidavit was supported by the email evidence that Mr. Donaldson had refused to return the truck; (3) the affidavit was supported by the email evidence that Mr. Donaldson had threatened Day; and (4) the affidavit was supported by the email evidence that Mr. Donaldson had instructed Day to not report the truck stolen. This evidence satisfies the probable cause standard.

Mr. Donaldson is not entitled to recovery for malicious prosecution against Stoker under the Fourth Amendment because the evidence demonstrates that there was probable cause to support Mr. Donaldson's detention from the time of his initial arrest through dismissal. And, as explained above, Mr. Donaldson is not entitled to relief under the Fourteenth Amendment. The court DISMISSES the Amended Complaint against Stoker.

The Tenth Circuit has held that once a court "conclude[s] that the employee" committed no constitutional violation," "the claim against the supervisory authority" "is properly dismissed." *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996). The court therefore DISMISSES the Amended Complaint against Clinton City, Utah.

Turning to Mr. Donaldson's claim against Day, Mr. Donaldson is not entitled to recovery for malicious prosecution because Mr. Donaldson did not suffer a constitutional violation. Mr. Donaldson is not entitled to recovery because probable cause would have existed even if the state

---

[5] In Utah, the elements of theft are "[1]obtain[ing] or exercis[ing] unauthorized control [2] over the property of another [3] with a purpose to deprive him thereof." Utah Code Ann. § 76-6-404.

court judge had received the omitted information. The court DISMISSES the Amended Complaint against Day.

## **CONCLUSION**

For the foregoing reasons, the court **DISMISSES** the Amended Complaint . (ECF No. 22.)

Mr. Donaldson also has several pending motions. The motions seek urgent court action (ECF No. 34); order for location of defendant (ECF No. 26); and for an order directing the United States Marshals Service to serve process. (ECF No. 23.) The court **DENIES** each of these motions as mooted by this Order.

DATED this 20th day of February, 2018.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Judge